**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHERWIN K. PARIKH MD, P.C. d/b/a TRIBECA SKIN CENTER, and DILLON MUSIC on behalf of itself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>ACCESSIBE, INC. and JOHN DOES 1-5<br><br>    Defendants. | Case No.: 24-CV-4848 |

**DEFENDANT ACCESSIBE, INC.'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ................................................................ 1

II.    FACTUAL BACKGROUND ....................................................... 2

    A.    Industry-Leading accessiBe Products and Services ........................... 2

    B.    Terms of Service Agreement ........................................... 3

    C.    Plaintiffs' Subscriptions ............................................ 4

III.   ARGUMENT ............................................................... 5

    A.    Legal Standard ................................................... 5

        1.    Rule 12(b)(1) ............................................. 5

        2.    Rule 12(b)(6) ............................................. 6

    B.    There is No Subject Matter Jurisdiction Over the MMWA Claim ................ 6

    C.    Tribeca Skin Care Lacks Article III Standing to Pursue Injunctive Relief ......... 7

    D.    Plaintiffs Fail to Allege Breaches of Contract and Covenant of Good Faith and Fair Dealing ...................................................... 8

        1.    accessiBe Did Not Breach the Terms of Service. ................. 10

        2.    The Terms of Service's Disclaimer Governs. .................... 12

        3.    The Terms of Service's Limitation of Liability Governs. ........... 12

    E.    The New York General Business Law § 349 Claim Fails as a Matter of Law ...... 14

        1.    Plaintiffs Do Not Properly Allege a Reasonable Consumer Would Be Misled. ....................................... 15

        2.    accessiBe Did Not Fail To Disclose Material Information. ........... 16

        3.    Plaintiffs Fail To Plead Requisite Injury. ...................... 17

    F.    The Breach of Implied Warranty Claim Fails as a Matter of Law. ............. 18

1. Plaintiffs Did Not Give accessiBe The Requisite Pre-Suit Notice.............................................................................18

2. All Implied Warranties Were Disclaimed..................................19

G. Plaintiffs Fail to Plead a Violation of Magnuson-Moss Warranty Act..................22

H. Plaintiffs' Negligent Misrepresentation Claim Fails .............................................23

IV. CONCLUSION.............................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*123RF LLC v. HSBC Bank USA, N.A.*,
    663 F. Supp. 3d 391 (S.D.N.Y. Sept. 20, 2023) ....................................................14

*Ademco Inc. v. TWS Tech. Ltd.*,
    No. 23–CV–8383 (AS), 2024 WL 3567417 (S.D.N.Y. July 29, 2024) ...........................23, 24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................6

*Bowring v. Sapporo U.S.A., Inc.*,
    234 F. Supp. 3d 386 (E.D.N.Y. 2017) ................................................................16

*Buonasera v. Honest Co., Inc.*,
    208 F. Supp. 3d 555 (S.D.N.Y. 2016)..................................................................8

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
    No. 21-cv-3610 (JGK), 2022 WL 837596 (S.D.N.Y. Mar. 21, 2022).....................................3

*Bynum v. Family Dollar Stores, Inc.*,
    592 F. Supp. 3d 304 (S.D.N.Y. 2022).................................................................18

*Cacchillo v. Insmed, Inc.*,
    638 F.3d 401 (2d Cir. 2011)............................................................................5

*Campbell v. Whole Foods Mkt. Grp., Inc.*,
    516 F. Supp. 3d 370 (S.D.N.Y. 2021)...........................................................18, 19, 23

*Catalano v. MarineMax*,
    590 F. Supp. 3d 487 (E.D.N.Y. 2022) ............................................................10, 20

*Colpitts v. Blue Diamond Growers*,
    527 F. Supp. 3d 562 (S.D.N.Y. 2021).................................................................18

*Consol. Edison, Inc. v. Ne. Utils.*,
    426 F.3d 524 (2d Cir. 2005)...........................................................................12

*Cosgrove v. Oregon Chai, Inc.*,
    520 F. Supp. 3d 562 (S.D.N.Y. 2021).................................................................24

*Dimond v. Darden Rests., Inc.*,
    No. 13–CV–5244, 2014 WL 3377105 (S.D.N.Y. Jul. 9, 2014)...........................................17

*DynCorp v. GTE Corp.*,
   215 F. Supp. 2d 308 (S.D.N.Y. 2002)..................................................................12

*Edmundson v. Klarna, Inc.*,
   85 F.4th 695 (2d Cir. 2023) ...........................................................................9

*Elkind v. Revlon Consumer Prods., Corp.*,
   No. 14–CV–2484 (JS)(AKT), 2015 WL 2344134 (E.D.N.Y. May 14, 2015) ......................24

*Fanok v. Carver Boat Corp., LLC*,
   576 F. Supp. 2d 404 (E.D.N.Y. 2008) ...............................................................10

*Feld v. Postmates, Inc.*,
   442 F. Supp. 3d 825 (S.D.N.Y. 2020)...............................................................8, 9

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013)............................................................................15

*Florence v. Merchants Cent. Alarm Co.*,
   51 N.Y.2d 793 (N.Y. 1980) .............................................................................12

*Franzini v. Bissell Home Care, Inc.*,
   No. 23-CV-02985 (JMA) (LGD), 2024 WL 3755297
   (E.D.N.Y. Aug. 12, 2024).............................................................................6, 7

*In re GEICO Customer Data Breach Litig.*,
   No. 21-CV-2210-KAM-SJB, 2023 WL 4778646 (E.D.N.Y. Jul. 21, 2023) ........................15

*Ghaznavi v. De Longhi Am., Inc.*,
   22 Civ. 1871, 2023 WL 4931610 (S.D.N.Y. Aug. 2, 2023)..........................................7

*Gillman v Chase Manhattan Bank, N.A.*,
   73 N.Y.2d 1 (N.Y. 1988) ...............................................................................22

*Glover v. Bob's Discount Furniture, LLC*,
   621 F. Supp. 3d 442 (S.D.N.Y. 2022)................................................................23

*Graham v. Bloomberg L.P.*,
   No. 22-CV-7015 (VSB), 2023 WL 6037974 (S.D.N.Y. Sept. 15, 2023) ..............................9

*Hesse v. Godiva Chocolatier, Inc.*,
   463 F. Supp. 3d 453 (S.D.N.Y. 2020)...................................................................8

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender
   & Co., Inc.*,
   37 N.Y.3d 169 (N.Y. 2021) .............................................................................14

*Hu v. Whaleco, Inc.*,
   23-CV-6962 (MKB) 2024 WL 4481439 (E.D.N.Y. Oct. 1, 2024)..........................................9

*Izquierdo v. Mondelez Int'l Inc.*,
   No. 16 Civ. 4697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ..............................23

*Jackson Heights Med. Grp, P.C. v Complex Corp.*,
   No. 94-06193, 222 A.D.2d 409 (N.Y. App. Div. 1995) ......................................................21

*Kamara v. Pepperidge Farm, Inc.*,
   570 F. Supp. 3d 69 (S.D.N.Y. 2021)...................................................................................23

*Koenigsberg v. Bds. of Trs. of Columbia Univ. in City of N.Y.*,
   No. 23 CIV. 1044 (PGG), 2024 WL 1256270 (S.D.N.Y. Mar. 22, 2024)............................17

*L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*,
   595 F.3d 458 (2d Cir. 2010).................................................................................................10

*Lasalle Bank Nat'l Assoc. v. Citicorp Real Est., Inc.*,
   No. 02 Civ. 7868 (HB), 2003 WL 1461483 (S.D.N.Y. Mar. 21, 2003) ............................23

*Lin v. Can. Goose US, Inc.*,
   640 F. Supp. 3d 349 (S.D.N.Y. 2022)..................................................................................23

*Lleshi v. Kerry*,
   127 F. Supp. 3d 196 (S.D.N.Y. 2015)....................................................................................5

*Lugones v. Pete and Gerry's Organic, LLC*,
   440 F. Supp. 3d 226 (S.D.N.Y. 2020)............................................................................7, 14

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)..................................................................................................5

*Maltz v. Union Carbide Chemicals & Plastics Co.*,
   992 F. Supp. 286 (S.D.N.Y. 1998).......................................................................................19

*Monroe v. Buzzfeed, Inc.*,
   23 Civ. 06234 (CM), 2024 WL 4350964 (S.D.N.Y. Sept. 30, 2024)......................................3

*My Play City, Inc. v. Conduit Ltd.*,
   589 F. App'x 559 (2d Cir. 2014) .........................................................................................13

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016).................................................................................................7

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000).................................................................................................16

*NY Drilling, Inc. v. TJM, Inc. LLC*,
573 F. Supp. 3d 854 (E.D.N.Y. 2021) ..................................................19, 20

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*,
830 F.3d 152 (2d Cir. 2016)................................................................10

*PC COM, Inc. v. Proteon, Inc.*,
946 F. Supp. 1125 (S.D.N.Y. 1996)......................................................13

*Pelman v. McDonald's Corp.*,
237 F. Supp. 2d 512 (S.D.N.Y. 2003)....................................................17

*Peni v. Daily Harvest, Inc.*,
No. 22-CV-5443, 2022 WL 16849451 (S.D.N.Y. Nov. 10, 2022)..........................8

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)...............................................................6

*Preferred Capital, Inc. v. Halkios Rest. Corp.*,
791 N.Y.S.2d 873 (N.Y. App. Term. 2004)................................................21

*Preira v. Bancorp Bank*,
885 F. Supp. 2d 672 (S.D.N.Y. 2012)....................................................17

*In re PXRE Grp., Ltd., Sec. Litig.*,
600 F. Supp. 2d 510 (S.D.N.Y. 2009)....................................................16

*Radiology and Imaging Specialists of Lakeland, P.A. v. FUJIFILM Med. Sys.,
U.S.A., Inc.*,
No. 20 CIV. 4117 (AKH), 2021 WL 149027 (S.D.N.Y. Jan. 15, 2021) ................13

*Roberts v. Weight Watchers Int'l, Inc.*,
712 F. App'x 57 (2d Cir. 2017) ........................................................12

*Roberts v. Weight Watchers Intl., Inc.*,
217 F. Supp. 3d 742 (S.D.N.Y. 2016), *aff'd*, 712 Fed. App'x. 57 (2d Cir.
2017) ..............................................................................10, 12, 13

*Rowland v. Bissell Homecare, Inc.*,
73 F.4th 177 (3d Cir. 2023) ...........................................................7

*Sandoval v. Uphold HQ Inc.*,
No. 21–CV–7579 (VSB), 2024 WL 1313826 (S.D.N.Y. Mar. 27, 2024) ..............15

*Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*,
832 F. Supp. 2d 194 (E.D.N.Y. 2010) ..................................10, 19, 20, 21

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43 (N.Y. 1999) ...................................................................17

*Smith v. Apple, Inc.*,
583 F. Supp. 3d 554 (S.D.N.Y. 2022)..........................................19, 22

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...............................................................................5

*State v. Wolowitz*,
95 A.D.2d 47 (N.Y. App. Div. 1983) ...................................................22

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
No. 14–CV–3826 (MKB), 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ...........24

*Strubel v. Comenity Bank*,
842 F.3d 181 (2d Cir. 2016).................................................................5

*Tomassini v. FCA US LLC*,
No. 3:14-CV-1226, 2016 WL 11707888 (N.D.N.Y. Nov. 23, 2016) ....................18

*Warth v. Seldin*,
422 U.S. 490 (1975).............................................................................5

*Wawa, Inc. v. Mastercard International, Inc.*,
No. 22-CV-03186 (NSR), 2023 WL 6147177 (S.D.N.Y. 2023) ...........14

*Wheeler v. Topps Co., Inc.*,
652 F. Supp. 3d 426 (S.D.N.Y. 2023) ..................................................18

**Statutes**

15 U.S.C. § 2310(d)(1) .............................................................................22

28 U.S.C. § 1332(d)(2) ...............................................................................6

Americans with Disabilities Act ................................................... *passim*

Class Action Fairness Act.......................................................................1, 6, 7

Magnuson-Moss Warranty Act.................................................... *passim*

N.Y. General Business Law § 349................................................ *passim*

N.Y. U.C.C. § 1–304 cmt. 1......................................................................12

N.Y. U.C.C. § 2–314.................................................................................19

N.Y. U.C.C. § 2–607(3).............................................................................18

**Other Authorities**

Rule 9(b) ...................................................................................................................................23

Rule 12(b)(1) ...............................................................................................................................5

Rule 12(b)(6) ...............................................................................................................................6

Defendant accessiBe, Inc. ("accessiBe"), by and through its counsel, Blank Rome LLP, submits this Memorandum of Law in support of its December 20, 2024 Motion to Dismiss Plaintiffs' First Amended Complaint (the "FAC") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## I.     INTRODUCTION

Plaintiff Sherwin K. Parikh MD, P.C. d/b/a Tribeca Skin Center ("Tribeca Skin Center" and collectively with Plaintiff Dillon Music, "Plaintiffs") brings this putative class action lawsuit alleging that accessiBe falsely advertised the performance of its web accessibility technology platform, which includes an AI-powered product, the 'accessWidget,' designed to render customer web content accessible to users with a wide array of disabilities, including persons afflicted with motor and visual impairment and cognitive disabilities. After Plaintiffs accessed the accessiBe website, they respectively subscribed to accessWidget, expressly agreeing to accessiBe's contractual Terms of Service ("Terms of Service"). The Plaintiffs both deployed accessiBe's accessWidget on their websites for a year, and then auto-renewed their subscriptions. Now, after being sued in two of the tens of thousands of identical lawsuits filed in recent years challenging the accessibility of businesses' websites, Plaintiffs assert that the accessWidget did not adequately protect them, even though there has been no finding in either of the lawsuits regarding the efficacy of the accessWidget.

The FAC should be dismissed for the following reasons:

*First*, this Court does not have subject matter jurisdiction to hear the Magnuson-Moss Warranty Act ("MMWA") claims, as there are not 100 named plaintiffs, and the Class Action Fairness Act ("CAFA") does not independently confer such subject matter jurisdiction.

*Second*, Tribeca Skin Center lacks Article III standing to pursue injunctive relief because the FAC does not allege a real or immediate threat of future injury given that Tribeca Skin Center is a former accessiBe customer.

*Third*, Plaintiffs' breach of contract and covenant of good faith and fair dealing counts fail because they are specifically waived under the binding Terms of Service, which contract terms are clear, unambiguous, and include valid disclaimers. Additionally, the Terms of Service limit accessiBe's legal liability and exposure, restricting any recovery by Plaintiffs.

*Fourth*, Plaintiffs' N.Y. General Business Law § 349 claim is infirm because the statute does not apply to transactions between sophisticated businesses, and Plaintiffs fail to allege that a reasonable consumer would be misled; do not evidence that accessiBe omitted material information; and cannot plead the requisite injury, as the Terms of Service clearly disclosed the product's limitations and disclaimers.

*Fifth*, Plaintiffs failed to timely notice their breach of implied warranties claim, which is nevertheless infirm because all alleged implied warranties were disclaimed under the Terms of Service. In addition, absent a sufficiently pleaded breach of implied warranty claim, the MMWA claim fails as a matter of law.

*Sixth*, Plaintiffs' claim for negligent misrepresentation should be dismissed because it is duplicative of their breach of contract claim; fails to depict the necessary special relationship among the parties; and is barred by the economic loss doctrine as the FAC only alleges monetary damages.

## II.     FACTUAL BACKGROUND

### A.     Industry-Leading accessiBe Products and Services

Defendant accessiBe is an AI-leveraging, cutting-edge web accessibility platform which helps businesses render their websites Americans with Disabilities Act ("ADA") compliant based

on the Web Content Accessibility Guidelines ("WCAG") standards, the leading international standard published by the Web Accessibility Initiative of the World Wide Web consortium (W3C). (https://accessibe.com/ (last visited Dec. 20, 2024)). accessiBe offers automated tools which scan and adjust websites for accessibility, rendering them usable for visitors with disabilities. (https://accessibe.com/accesswidget (last visited Dec. 20, 2024)). accessiBe's products include user-friendly tools like accessWidget, which provides options for text resizing and color adjustments, and accessScan, a scanning tool that highlights areas requiring accessibility improvement. *Id.* Its AI-powered solutions continuously monitor and update websites, assisting companies to maintain ongoing ADA compliance. *Id.*

**B.     Terms of Service Agreement[1]**

When a business creates an accessiBe account, it enters account details such as name, email address and password:



---

[1] All facts referenced herein are documents of which the Court may take judicial notice, such as the Terms of Service referenced in, and integral to, the Complaint. *See, e.g., Monroe v. Buzzfeed, Inc.*, 23 Civ. 06234 (CM), 2024 WL 4350964, at *4 (S.D.N.Y. Sept. 30, 2024) (taking judicial notice of Facebook's Terms of Service); *Bus. Casual Holdings, LLC v. YouTube, LLC*, No. 21-cv-3610 (JGK), 2022 WL 837596, at *1 n.2 (S.D.N.Y. Mar. 21, 2022) ("The Court may consider the terms of service…on this motion to dismiss even though the terms of service were not reproduced in or attached to the complaint" finding that because they were publicly available they were subject to judicial notice.)

[2] Sign-up screen as it appeared in July2022 when Tribeca Skin Center registered for its account.

[3] Sign up screen as it appeared in August 2023 when Dillon Music registered for its account.

Click the "Sign Up" button informs the customer that "by signing up you agree to our terms of service." *Id.* The Terms of Service is displayed in a different color (bright blue versus black), and hyperlinks to the full Terms of Service. Those Terms of Service are attached as Exs. 1 and 2 of the Samuel D. Levy Declaration. Relevant to this action are Terms of Service sections including: Litigation Support Package, Remediation Services; Updates; Availability and Functionality; Disclaimer of Warranties*;* and Limitation of Liability.

### C.     Plaintiffs' Subscriptions

When Plaintiffs created their respective accessiBe accounts, they agreed to be bound by the Terms of Service.  (*See supra* accessiBe registration p. 3) Plaintiffs allege they created their accounts after viewing the accessiBe website without consulting accessiBe-related social media posts.  (FAC ¶¶ 50, 72) After accepting the free seven-day trial, Tribeca Skin Care decided in August 2022 to purchase a subscription and implement accessWidget on its company website. (FAC ¶ 54) Dillon Music signed up for accessiBe in August 2023. (FAC ¶ 73)

After successfully deploying the accessiBe subscriptions for one year, Plaintiffs renewed their subscription in August 2023 (Tribeca Skin Care) and August 2024 (Dillon Music) (FAC ¶¶ 60, 77)  In January 2024, Tribeca Skin Care was sued in a class action for its website's alleged accessibility obstacles (FAC ¶ 62), but promptly settled the lawsuit, precluding any findings of fact regarding the performance of accessiBe's services or products.  Indeed, the lawsuit revealed no facts regarding Tribeca Skin Care's use of accessiBe's products or services, or whether the underlying claims had anything to do with accessiBe's product performance.  (FAC ¶ 65) Tribeca Skin Care thereafter discontinued its accessiBe account, and has indicated no intention to remain a customer. (FAC ¶ 66)

 Dillon Music was sued in a similar class action in May 2024 relating to its company website. (FAC ¶ 81)  That lawsuit has similarly revealed no facts denigrating the performance of

accessiBe's products or services; to the contrary, Dillon Music renewed its subscription in August 2024, and remains an accessiBe subscriber. (www.dillonmusic.com (last visited Dec. 20, 2024).

While Plaintiffs reference in the FAC accessiBe's product, 'accessFlow' (¶¶ 10, 89, 144, 149, 154), Plaintiffs never purchased 'accessFlow,' which is exclusively for the use of developers. Any allegations regarding 'accessFlow' should be disregarded, as Plaintiffs have no standing to assail that product's performance.

## III.    ARGUMENT

### A.    Legal Standard

#### 1.    <u>Rule 12(b)(1)</u>

To survive a Rule 12(b)(1) dismissal motion, a district court must have "the statutory or constitutional power to adjudicate" the matter at issue. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Pursuant to Rule 12(b)(1), dismissal for lack of subject matter jurisdiction is appropriate if the Court . . . lacks the constitutional or statutory power to adjudicate the case." *Lleshi v. Kerry*, 127 F. Supp. 3d 196, 199 (S.D.N.Y. 2015).

Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "[B]ecause standing is necessary to [the Court's] jurisdiction, [the Court is] obliged to decide the question at the outset." *Strubel v. Comenity Bank*, 842 F.3d 181, 187 (2d Cir. 2016). "[A] plaintiff must demonstrate standing for each claim and form of relief sought." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (*quoting Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)).

"[T]he 'irreducible constitutional minimum' of standing" requires that the plaintiff "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Because

the elements of Article III standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

## 2. <u>Rule 12(b)(6)</u>

To survive a Rule 12(b)(6) dismissal motion, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quotation omitted). A complaint cannot simply recite legal conclusions or bare cause of action elements; it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## B. **There is No Subject Matter Jurisdiction Over the MMWA Claim**

This Court does not have subject matter jurisdiction to hear Plaintiffs' MMWA claim because the claim only vests subject matter jurisdiction based upon a federal question where there are not less than 100 named plaintiffs. *Franzini v. Bissell Home Care, Inc.*, No. 23-CV-02985 (JMA) (LGD), 2024 WL 3755297, at *4 (E.D.N.Y. Aug. 12, 2024). Plaintiffs are wrong that CAFA confers subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) (FAC ¶ 15) because the issue is "whether CAFA provides an alternative basis for federal jurisdiction over MMWA claims, or whether the MMWA's more stringent federal jurisdictional requirements must always be met" has been decided, with the SDNY concluding that CAFA does not confer a court with jurisdiction

to consider a MMWA claim. *Ghaznavi v. De Longhi Am., Inc.*, 22 Civ. 1871, 2023 WL 4931610, at **7, 9, 10 (S.D.N.Y. Aug. 2, 2023) ("CAFA does not displace the MMWA's stringent federal jurisdictional requirements," and without 100 named plaintiffs the court "lack[ed] a statutory basis for subject matter jurisdiction"); *see also Franzini*, 2024 WL 3366035, at *4; (*Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 183 (3d Cir. 2023) ("As a result, CAFA does not provide a basis for federal jurisdiction over MMWA class actions that do not satisfy the MMWA's jurisdictional requirements."); *Floyd v. Am. Honda Motor Co.*, Inc., 966 F.3d 1027, 1032–35 (9th Cir. 2020) (similar).

Because there are not 100 named plaintiffs, the MMWA's separate jurisdictional requirement has not been met. *Ghaznavi,* 2023 WL 4931610, at *10 ("Because the Court lacks original jurisdiction over Plaintiff's MMWA claim, it also lacks supplemental jurisdiction over his related state-law claims"); *Franzini*, 2024 WL 3366035, at *7 (absent independent jurisdiction over MMWA claim, no CAFA jurisdiction over the remaining state law claims). Therefore, under Rule12(b)(1), the MMWA claim and the state law claims that are brought under supplemental jurisdiction to the MMWA claim should be dismissed.

### C.    Tribeca Skin Care Lacks Article III Standing to Pursue Injunctive Relief

Tribeca Skin Care lacks standing to pursue injunctive relief because the FAC does not allege a real or immediate threat of future injury. To obtain injunctive relief, a plaintiff must demonstrate injury in fact, causation, and redressability; a party fails to do so where she is unable to establish "a 'real or immediate threat' of injury.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)).

An allegation of "*possible* future injury," or of "past exposure to illegal conduct," is insufficient to clear the requisite bar. *Lugones v. Pete and Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 238 (S.D.N.Y. 2020) (emphasis in original) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S.

398, 409 (2013); *Lyons*, 461 U.S. at 102). A claim to sue on behalf of a putative class does not excuse a plaintiff's failure to demonstrate future injury to itself. *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016) ("named plaintiffs must have standing in order to seek injunctive relief on behalf of the class.") (citing *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)).

Tribeca Skin Care concedes that it ceased to utilize accessiBe's products and retained a new remediation firm for its website. (FAC ¶ 66) Therefore, any harm that Tribeca Skin Care allegedly suffered has passed, and the company cannot establish a real or immediate threat of future harm. Such lack of standing is not remedied by projecting hypothetical harm. *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465 (S.D.N.Y. 2020) (no standing where "the injury alleged ... is hypothetical"). Because the FAC does not allege Tribeca Skin Care intends to purchase accessWidget, it does not allege an injury sufficient to supply standing for an injunction, as there is no foreseeable future harm.

### D. Plaintiffs Fail to Allege Breaches of Contract and Covenant of Good Faith and Fair Dealing

Sign-in-wrap agreements "do not require the user to click on a box showing acceptance of the 'terms of use' in order to continue. Rather, the website is designed so that a user is notified of the existence and applicability of the site's 'terms of use' when proceeding through the website's sign-in or login process." *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 829 (S.D.N.Y. 2020) (quoting *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 399 (E.D.N.Y. 2015)).. Courts confirm that such agreements are valid when the existence of the terms are reasonably communicated. *Feld. 442 F. Supp. 3d at 829; see also Peni v. Daily Harvest, Inc*., No. 22-CV-5443, 2022 WL 16849451, at *4 (S.D.N.Y. Nov. 10, 2022) (dark text warning — "[b]y clicking above, you agree to our Terms of Use and Terms of Sale, and consent to our Privacy Policy" — was reasonably conspicuous

because, *inter alia*, the "dark text" was "set off from the light background and [was] written in a font roughly the same size as that of the primary text on the page").

When Plaintiffs created their accessiBe account, all information on the page appeared on a plain white interface and above the button "sign up" stated "by signing up you agree to our terms of service," with "terms of service" appearing in a bright blue font different from the other text color on the page. (*Supra,* accessiBe registration page) This text is conspicuous and places a user on inquiry notice. *Feld*, 422 F. Supp. 3d at 831–32 (the language "by tapping Sign Up or Facebook button, you agree to **the Terms of Service** and **Privacy Policy**" put a reasonable user on notice of the agreement) (emphasis in original).

Given that a reasonably prudent user is considered to be on inquiry notice of contractual terms when those terms are presented clearly and conspicuously on an uncluttered page, and the notice and hyperlinked terms are spatially and temporally linked with the initial transaction, the Court must deem binding the Terms of Service. *Hu v. Whaleco, Inc*., 23-CV-6962 (MKB) 2024 WL 4481439, at *18 (E.D.N.Y. Oct. 1, 2024); *Edmundson v. Klarna, Inc*., 85 F.4th 695, 709 (2d Cir. 2023); *Feld*, 422 F. Supp. 3d at 832.

Additionally, the Terms of Service are not ambiguous, especially given the "clear prompt directing users to read the [Terms] and signaling that their acceptance of the benefit of registration would be subject to contractual terms." *Hu*, 2024 WL 4481439 at *16 (quoting *Meyer v. UIber Techs, Inc.*, 868 F.3d 66, 79 (2d Cir. 2017)); *see also Graham v. Bloomberg L.P*., No. 22-CV-7015 (VSB), 2023 WL 6037974, at *5 (S.D.N.Y. Sept. 15, 2023) (the language, "[b]y submitting my information, I agree to the Privacy Policy and Terms of Service and to receive offers and promotions from [the defendant]" — was "a clear prompt to read the terms and conditions and signal[ed] to a user that purchase will bind them to those terms").

### 1. **accessiBe Did Not Breach the Terms of Service.**

"At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). Whether a contract is ambiguous is a question of law for a court to decide. *L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465–66 (2d Cir. 2010).

Here, Plaintiffs received and incorporated the product as indicated in the Terms of Service, as the accessWidget rendered their company websites accessible and compliant with ADA standards; beyond the general Terms of Service disclaimers, accessiBe made it clear that its product would not avoid customers from being sued, and that it may not be perfect nor error-free. (Terms of Services Updates; Availability and Functionality Section, at 5–6) Plaintiffs received what they bargained for: a product that reviews and updates its website to better follow ADA laws and standards on an "as is" basis. Such disclaimers prevent Plaintiffs from recovering on a breach of contract claim. *Catalano v. MarineMax*, 590 F. Supp. 3d 487, 504–05 (E.D.N.Y. 2022).

Even if Plaintiffs raise an issue concerning accessWidget's utility, the FAC does not state a plausible breach of contract claim based on alleged defects because, by the Terms of Service's clear and unambiguous terms, Plaintiffs agreed to accept the product "as is." *Id.*; *see also Fanok v. Carver Boat Corp., LLC*, 576 F. Supp. 2d 404, 413 (E.D.N.Y. 2008) (dismissing breach of contract and warranty claims because plaintiff purchased item "as is"); S*hema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 203 (E.D.N.Y. 2010) (same)

Therefore, any claim that Plaintiffs' respective websites were updated to improve ADA compliance, but the updates still contained some error, does not constitute a breach of contract, given the presence of the Terms of Service disclaimers. *See Roberts v. Weight Watchers Intl., Inc.*, 217 F. Supp. 3d 742, 751 (S.D.N.Y. 2016), *aff'd*, 712 Fed. App'x. 57 (2d Cir. 2017).

Additionally, Dillon Music claims that it was subject to the threat of a class action *prior* to using accessiBe's service (FAC ¶ 81), confirming that no accessiBe product placed it on a worse footing than it otherwise already was, and the Terms of Service could have given Dillon Music no comfort that the threatened lawsuit would be withdrawn.

Plaintiffs further allege that accessiBe does not define "what it means by litigation support." (FAC ¶ 104) However, the Terms of Service clearly define the Litigation Support package as *"providing [Plaintiff] with relevant documentation and/or materials to demonstrate the accessibility features implemented through accessWidget on the Customer Website(s)."* (Levy Decl., Ex. 2 at 7) Additionally, the section provides that Plaintiffs *"acknowledge[d] and agree[d] that the provision of the Litigation Support Package is provided as technical assistance only and is not a legal service. [Plaintiffs] must always consult with [their] legal advisors, including with respect to use of any outputs of the Litigation Support Package as part of [their] defense against a third-party claim."* *Id.*

Tribeca Skin Care observes that when the lawsuit was filed, accessiBe provided "an audit report stating that its website conformed to WCAG level AA and was fully ADA compliant and a naked statement that the claims against Tribeca Skin Care were invalid." (FAC ¶ 63) Tribeca Skin Care further concedes that it hired outside counsel to defend the ADA action, allegedly because accessiBe's support was inefficient despite the Terms of Service clearly stating it did not provide legal guidance. (*Id.* at ¶ 65; Levy Decl., Ex. 1 at 5) Tribeca Skin Care therefore describes the given support as the *exact* kind agreed to in the Terms of Service, rendering its claim invoking extra-contractual support beyond the unambiguous Terms of Service with no legal basis. The same can be said for Dillon Music, for whom accessiBe provided an audit report and informative video. (FAC ¶ 83)

## 2. The Terms of Service's Disclaimer Governs.

"[T]he covenant of good faith and fair dealing is implicit in every contract," but "it cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights." *Consol. Edison, Inc. v. Ne. Utils.*, 426 F.3d 524, 529 (2d Cir. 2005) (quotation omitted); *see also* N.Y. U.C.C. § 1–304 cmt. 1 ("This section does not support an independent cause of action for failure to perform or enforce in good faith .... [T]he doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached."). Thus, a "plaintiff cannot invoke the covenant to erase or otherwise vary [a] disclaimer of warranties." *Roberts*, 217 F. Supp. 3d at 752.

For example, in *Roberts v. Weight Watchers Int'l, Inc.*, the plaintiff complained that a mobile app did not perform as promised; the app had a subscription agreement which stated that the company "did not warrant that its services would be error-free or uninterrupted, or that defects would be corrected." *Id.* at 750. The Second Circuit confirmed that such language could not have induced the plaintiff to believe the subscription agreement implied otherwise, *Roberts v. Weight Watchers Int'l, Inc.*, 712 F. App'x 57, 61 (2d Cir. 2017), warranting dismissal of the cause of action for breach of covenant of good faith and fair dealing should be dismissed.

## 3. The Terms of Service's Limitation of Liability Governs.

In New York, "a limitation on liability provision in a contract represents the parties' Agreement on the allocation of the risk of economic loss in event that the contemplated transaction is not fully executed, which the courts should honor." *Roberts*, 217 F. Supp. 3d at 754 (quoting *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430 (N.Y. 1994)).

Courts routinely limit liability based on such provisions. *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 317 (S.D.N.Y. 2002) (internal citations omitted); *see also, e.g.*, *Florence v.*

*Merchants Cent. Alarm Co.*, 51 N.Y.2d 793, 794–95 (N.Y. 1980) (upholding contract term limiting liability); *My Play City, Inc. v. Conduit Ltd.*, 589 F. App'x 559, 562–63 (2d Cir. 2014) (upholding a term stating that "in no event shall [defendant's] liability for any claim arising out of or related to this agreement, the use or inability to use the [widget] . . . exceed $5,000").

Plaintiffs' request for additional money damages for its breach of contract claim ignores the Terms of Service, which includes a Limitation of Liability clause. (Levy Decl., Ex. 2 at 28-29) [4] In *Roberts*, the limitation of liability provision at issue stated that the provider "shall not be liable for any . . . damages whatsoever" and that a plaintiff's sole remedy for dissatisfaction with the program was to discontinue using the program. 217 F. Supp. 3d at 747–48. The court held that this provision limited the plaintiff's recourse to cancellation or termination of the subscription agreement, and barred the plaintiff's breach of contract claim for money damages.

Here, the Terms of Service Limitation of Liability clause limits Plaintiffs' recovery to the amount paid to accessiBe for its services during the six months leading to the alleged breach. (Levy Decl., Ex. 2 at 29) Such a limitation of damages is not unconscionable, which Plaintiffs do not even assert. (FAC ¶ 140) Therefore, any damages sought beyond that afforded in the Terms of Service should be stricken. *Radiology and Imaging Specialists of Lakeland, P.A. v. FUJIFILM Med. Sys., U.S.A., Inc.*, No. 20 CIV. 4117 (AKH), 2021 WL 149027, at *4 (S.D.N.Y. Jan. 15, 2021); *PC COM, Inc. v. Proteon, Inc.*, 946 F. Supp. 1125, 1138 (S.D.N.Y. 1996) ("Numerous cases have found that 'the doctrine of unconscionability is not typically applied to commercial dealings between business entities.'" (quotation omitted)).

---

[4] For the purposes of citations to the Disclaimer of Warranties and Limitation of Liability, accessiBe cites to the Levy Declaration, Ex. 2, which contains the materially same clauses as Ex.t 1. Ex. 3 depicts a redline comparison of the two sections..

**E.    The New York General Business Law § 349 Claim Fails as a Matter of Law**

To plead a cause of action under New York General Business Law § 349, "a plaintiff must allege that: (1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 177 (N.Y. 2021).

While the "the consumer-oriented prong does not prohibit the application of GBL § 349 to 'disputes between businesses[,] it does severely limit it.'" *Wawa, Inc. v. Mastercard International, Inc.*, No. 22-CV-03186 (NSR), 2023 WL 6147177, at *7 (S.D.N.Y. 2023) (citation omitted). Allegedly deceptive acts between sophisticated entities with equal bargaining power do not fall under GBL § 349, as they "are not the small-time individual consumers § 349 was intended to protect." *Id.* (quotation omitted)*; see also 123RF LLC v. HSBC Bank USA, N.A.*, 663 F. Supp. 3d 391, 403 (S.D.N.Y. Sept. 20, 2023) (citation omitted). As such, the Plaintiffs, with their sophisticated commercial acumen and over 40 years of business experience, do not fall under GBL § 349. (FAC ¶¶ 47, 69)

Further, Plaintiffs still have not adequately pled a § 349 claim, which must be based on alleged statements and images that the plaintiff actually viewed before purchasing a product. *Lugones v. Pete and Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020) ("alleged representations that Plaintiffs do not claim to have seen before purchasing the [products] are non-actionable."). Plaintiffs' reliance on various social media posts they claim are misleading is of no moment, as they fail to allege that they *actually viewed* these posts *before* using accessiBe's product. Rather, Tribeca Skin Care's business manager allegedly "reviewed accessiBe's website." (FAC ¶ 50)

Additionally, Dillon Music simply alleges that its agent decided to use accessiBe's service after viewing its "website and promotional materials." (*Id.* at ¶ 72) Dillon Music does not identify the promotional materials or what they represented that allegedly induced Dillon Music to subscribe to accessWidget. As such, the allegations do not adequately plead a § 349 claim. *See In re GEICO Customer Data Breach Litig.*, No. 21-CV-2210-KAM-SJB, 2023 WL 4778646, at *17 (E.D.N.Y. Jul. 21, 2023) ("[t]o establish the requisite causal connection between an alleged written misrepresentation and the resulting injury, [a] plaintiff must plausibly allege that she actually viewed the misleading statement prior to making her decision to purchase, and must set forth *where, when and how* she came to view it.") (emphasis added) (quotation omitted). Therefore, this Court must only look at representations on accessiBe's website when Plaintiffs purchased the product.

### 1. Plaintiffs Do Not Properly Allege a Reasonable Consumer Would Be Misled.

Whether an act is "materially misleading" is an objective inquiry, and the decisive question is whether the act is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial. For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Id.* at 742. (finding a disclaimer defeated a GBL § 349 claim). Additionally, where a court finds an impression that a representation is misleading, a disclaimer is upheld as a matter of law "if a disclaimer addresses the precise deception alleged." *Sandoval v. Uphold HQ Inc.*, No. 21–CV–7579 (VSB), 2024 WL 1313826, at *7 (S.D.N.Y. Mar. 27, 2024). "In evaluating the efficacy of such a disclaimer, courts consider factors such as the font size, placement, and emphasis. Courts routinely conclude that the presence

of a disclaimer, considered in context, precludes the finding that a reasonable consumer would be deceived by the defendant's conduct." *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017) (citations omitted).

Here, Plaintiffs agreed to the Terms of Service before buying the product, as there is no way to sign-up for an account without doing so. The section titled, "Disclaimer of Warranties" appeared in bold letters and in a distinct and bright royal blue color. (Levy Decl., Ex. 2 at 28) The text itself, in all capital letters, unambiguously disclaims all warranties. (*Id.*) Additionally, the Terms of Service also address the exact assistance that accompanies the Litigation Support package, speaking precisely to the promises of the product itself. (*Id.* at 4) Therefore, a reasonable consumer could not believe that the Litigation Support package may extend beyond the support accessiBe provided Plaintiff. Paradoxically, Plaintiffs' websites both employ their own terms of service agreements at registration. Tribeca Skin Center, https://www.mypatientvisit.com/#/register; Dillon Music, https://www.dillonmusic.com/account/register/ (last visited Dec. 16, 2024).

### 2. accessiBe Did Not Fail To Disclose Material Information.

Plaintiffs argue that accessiBe is liable under GBL § 349 because it "omitted disclosure of material information." To determine whether a plaintiff has specifically alleged defendants' knowledge of facts or access to information contradicting their public statements, Second Circuit cases uniformly rely on allegations that "(1) specific contradictory information was available to the defendants (2) at the same time they made their misleading statements." *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 536 (S.D.N.Y. 2009) (internal citations and quotation marks omitted); *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information.").

Additionally, a plaintiff claiming that an omission constitutes actionable deception must show either that the business alone possessed the relevant information, or that a consumer could not reasonably obtain the information. *See Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 529 (S.D.N.Y. 2003) (plaintiff must show why an omission is deceptive by alleging that the information omitted "was solely within [the defendant's] possession or that a consumer could not reasonably obtain such information."); *Dimond v. Darden Rests., Inc.*, No. 13–CV–5244, 2014 WL 3377105, at *14 (S.D.N.Y. Jul. 9, 2014) (dismissing GBL § 349 where plaintiff failed to allege facts showing he could not "reasonably obtain" the relevant information).

Here, Plaintiffs do not point to any information that is contradictory to what it viewed on accessiBe's website. accessiBe does not claim that utilizing its product guarantees litigation protection. (Levy Decl., Ex. 2 at 6) Plaintiffs fail to allege that accessiBe did not disclose material information that only it possessed. To the contrary, the FAC states that there is a public overlay fact sheet "that evaluated what automated overlays, including Defendant's products, can and cannot do," ultimately stating that no existing overlay product on the market can cause a website to become fully compliant." (FAC ¶ 34)

### 3. Plaintiffs Fail To Plead Requisite Injury.

To plead an injury pursuant to § 349, a plaintiff must allege that because of a materially misleading practice, it purchased a product and did not receive the value of the purchase. *Koenigsberg v. Bds. of Trs. of Columbia Univ. in City of N.Y.*, No. 23 CIV. 1044 (PGG), 2024 WL 1256270, at *9 (S.D.N.Y. Mar. 22, 2024) (citation omitted). For consumer goods, an allegation of a defendant's deception alone is not enough to plead injury, because a plaintiff may have received the benefit of the contract despite the alleged misrepresentation. *See Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676–77 (S.D.N.Y. 2012); *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55–56, (N.Y. 1999). Additionally, "[i]t is settled that a plaintiff cannot establish a Section 349 claim by

claiming that [they] would not have purchased a product absent the deceptive practice." *Tomassini v. FCA US LLC*, No. 3:14-CV-1226 (MAD/DEP), 2016 WL 11707888, at *7 (N.D.N.Y. Nov. 23, 2016) (collecting cases).

Tribeca Skin Care settled its pending class action lawsuit without any finding whether its website sufficiently complied with ADA requirements. (FAC ¶ 65) Dillon Music was subject to a lawsuit threat via a handwritten letter from an unidentified sender prior to subscribing to accessiBe's services. (FAC ¶ 70) Dillon Music admits it was not contacted by that sender again after subscribing to accessiBe's service though another lawsuit has since commenced. (FAC ¶¶ 70, 81) Therefore, because Plaintiffs received a benefit of the contract, with the product performing as disclosed in the Terms of Service, they do not plead the requisite injury.

### F.       The Breach of Implied Warranty Claim Fails as a Matter of Law.

#### 1.       <u>Plaintiffs Did Not Give accessiBe The Requisite Pre-Suit Notice.</u>

To recover on a breach of implied warranty, a buyer "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.Y. U.C.C. § 2–607(3); *Wheeler v. Topps Co., Inc.*, 652 F. Supp. 3d 426, 432 (S.D.N.Y. 2023) (citing *Tighe v. N. Shore Animal League Am.*, 142 A.D.3d 607, (N.Y. App. Div. 2016)) (dismissing implied warranty claim for failure of notice). Under New York law, a plaintiff must provide direct pre-suit notice before filing a claim and cannot rely on complaints from other consumers. *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 391 n.12, 392 (S.D.N.Y. 2021) (dismissing claim where the plaintiff alleged only that she "provided or will provide" notice and that "numerous complaints by consumers" put the defendant on notice); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 590 (S.D.N.Y. 2021) (same); *Bynum v. Family Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 314–15 (S.D.N.Y. 2022) (same).

Here, Plaintiffs fail to plead that pre-suit notice was given to accessiBe prior to the filing of the Complaint, because there was no such notice furnished to accessiBe. While both Plaintiffs contacted accessiBe regarding its litigation support, neither filed any version of notice about their alleged claims. As such, the cause of action for breach of implied warranty must be dismissed. *Campbell*, 516 F. Supp. 3d at 391 (S.D.N.Y. 2021)

## 2.    All Implied Warranties Were Disclaimed.

Even if Plaintiffs furnished the required notice, accessiBe properly disclaimed all implied warranties in the Terms of Service. (Levy Decl., Ex. 2 at 28)  N.Y. U.C.C. § 2–314 dictates that every contract is accompanied with an implied warranty of merchantability, unless those warranties are "excluded or modified." *NY Drilling, Inc. v. TJM, Inc. LLC*, 573 F. Supp. 3d 854, 858 (E.D.N.Y. 2021). A contract's disclaimer of an implied warranty of merchantability must mention merchantability and be conspicuous. *Id.* (citing N.Y. U.C.C. § 2–316(2)). "Whether a term is sufficiently 'conspicuous' is a decision for the court." *Id.*

Here, Plaintiffs agreed to be bound by the Terms of Service when they registered to utilize accessiBe's products. The disclaimer in the Terms of Service is sufficiently conspicuous under New York law. *See Smith v. Apple, Inc.*, 583 F. Supp. 3d 554, 567 (S.D.N.Y. 2022) (conspicuous disclaimer of implied warranty where the contract specifically disclaimed implied warranties in capital letters); *see also Shema Kolainu-Hear Our Voices*, 832 F. Supp. 2d at 200 (disclaimer conspicuous because it "[wa]s in capital letters in a separate block paragraph and specifically mention[ed] merchantability . . .  [and] fitness"); *Maltz v. Union Carbide Chemicals & Plastics Co.*, 992 F. Supp. 286, 304 (S.D.N.Y. 1998) ("The warranty disclaimer is in capital letters and specifies the warranties that are being disclaimed.").

In *NY Drilling*, the court determined that a terms of service agreement's disclaimer of warranties was sufficiently conspicuous where it appeared in all capital letters "set off in its own

discrete paragraph" and in a different font and type size. 573 F. Supp. 3d at 860. For the disclaimer at issue here, the disclaiming paragraph is in its own paragraph and in all caps font. (Levy Decl., Ex. 2 at 28)  Only two paragraphs in the entire Terms of Service appear in all capital letters, the "Disclaimer of Warranties" and "Limitation of Liability" sections, respectively. (*Id.* at 28-29) Under New York law, this paragraph is conspicuous and binding. *N.Y. Drilling*, 573 F. Supp. 3d 854 at 858.

Additionally, Plaintiffs argue that the disclaimer is "procedurally and substantively unconscionable." (FAC ¶ 140) The determination of unconscionability is a matter of law for the court to decide. *Shema Kolainu-Hear Our Voices*, 832 F. Supp. 2d at 200. To render a contract unconscionable, New York courts require a party to show that a contract is both procedurally and substantively unconscionable when made. *Id.* at 201. (citation omitted). Procedural unconscionability concerns the formation process of the contract, while substantive unconscionability looks at the language of the contract itself. *Id.* (citation omitted).

"While there may be extreme cases where a contractual term is so outrageous and oppressive as to warrant a finding of unconscionability irrespective of the contract formation process, such cases are the exception. Generally, there must be a showing of both a lack of a meaningful choice and the presence of contractual terms which unreasonably favor one party." *Id.* at 68. (internal citation omitted).)  Plaintiffs' procedural unconscionability argument ignores that a contract offered on a 'take it or leave it' basis is not necessarily unconscionable. *Catalano*, 590 F. Supp. 3d at 506 (citing *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 525 (E.D.N.Y. 2017)). Factors include "the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education

of the party claiming unconscionability, and whether there was disparity in bargaining power."

*Shema Kolainu-Hear Our Voices*, 832 F. Supp. 2d at 201 (citation omitted).

The Terms of Service were presented without any deceptive or high-pressured tactics, and there was no fine print utilized because, as mentioned above, the disclaimer of all warranties occurred in capital letters and was titled in bold. (Levy Decl., Ex. 2 at 28-29) Additionally, Plaintiffs had the opportunity to have a free 7-day trial to confirm that the product would perform as represented. Indeed, Terms of Service Section 8 provides that:

> *Customer acknowledges and agrees that following the integration of the accessiBe Solution onto its Customer Website, it is Customers' responsibility to (a) test and verifies the functionality of the accessiBe Solution on its Customer Website, and (b) ensure that the integration is in accordance with accessiBe's tools and documentation. If the Customer encounters issues with the implementation or with any content on its Customer Website, it must contact us via hello@accessibe.com and describe such issues and/or problems, and we will assist the customer in resolving the issues or problems.*

(Levy Decl., Ex. 1 at 18) After Tribeca Skin Care utilized the 7-day free trial, it elected to purchase the product and agreed to the Terms of Service. *See, e.g.*, *Shema Kolainu-Hear Our Voices*, 832 F. Supp. 2d at 203 ( "The fact that this contract's complete disclaimer of warranties has ended up having harsh consequences, leaving [plaintiff] powerless to ensure the quality of the software it licensed, cannot change the conclusion that the disclaimer is enforceable as part of the bargain struck between the parties at the time they entered the contract."); *see also*, *Preferred Capital, Inc. v. Halkios Rest. Corp.*, 791 N.Y.S.2d 873, 873 (N.Y. App. Term. 2004) (refusing to invalidate disclaimer of warranties even though machine "did not work and was useless" because defendants "made no showing that they lacked a meaningful choice to enter into the contract and that they did not freely consent to the sales contract"); *see also Jackson Heights Med. Grp, P.C. v Complex Corp.*, No. 94-06193, 222 A.D.2d 409, 410 (N.Y. App. Div. 1995) (disclaimer of

warranties not unconscionable as a matter of law when "plaintiffs ... made no showing that they lacked a meaningful choice and did not freely consent to [the] lease.").

To find substantive unconscionability, courts analyze "the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Gillman v Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 12, (N.Y. 1988) (citation omitted). Only in "exceptional cases where a provision of a contract is so outrageous" should a contract be found to be "unenforceable on the ground of substantive unconscionability alone." *Id.* Because any contract "essentially involves a bargained-for exchange between the parties .... [a]bsent some violation of law or transgression of a strong public policy, the parties to a contract are basically free to make whatever agreement they wish, no matter how unwise it might appear to a third party." *State v. Wolowitz*, 95 A.D.2d 47, 69 (N.Y. App. Div. 1983) Here, Plaintiffs have not offered, and cannot advance, a reason for this Court to conclude that both the "as is" and disclaimer of warranties is "so grossly unreasonable" for it to be rendered unenforceable. Plaintiffs have not plausibly alleged procedural or substantive unconscionability, and its cause of action for breach of implied warranties should be dismissed.

### G.     Plaintiffs Fail to Plead a Violation of Magnuson-Moss Warranty Act

In addition to the 12(b)(1) reasons for dismissing the MMWA claim, Plaintiffs fail to plead a sufficient breach of implied warranty claim under New York Law. The MMWA provides, in relevant part, that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). The MMWA does not create new substantive warranty obligations, which remain "solely the creation of state law." *Smith v. Apple, Inc.*, 583 F. Supp. 3d at 567 (citation omitted). A plaintiff must adequately allege a state-law breach of warranty to state a claim under

the MMWA. *Glover v. Bob's Discount Furniture, LLC*, 621 F. Supp. 3d 442, 452 (S.D.N.Y. 2022). Here, Plaintiffs have failed to make such a pleading, necessitating dismissal of their MMWA violation claim alongside the state breach of implied warranty claim. *Kamara v. Pepperidge Farm, Inc.*, 570 F. Supp. 3d 69, 81 (S.D.N.Y. 2021) (dismissing MMWA claim because plaintiff did "not plausibly allege an underlying breach of warranty.")

### H.     Plaintiffs' Negligent Misrepresentation Claim Fails

Plaintiffs' negligent misrepresentation claim should be dismissed for two reasons: (1) the claim is duplicative of its breach of contract claim; and (2) Plaintiffs fail to plead facts that show a special relationship exists between the two parties. A negligent misrepresentation claim that sounds in fraud must comply with Rule 9(b)'s heightened pleading requirement. *Ademco Inc. v. TWS Tech. Ltd.*, No. 23–CV–8383 (AS), 2024 WL 3567417, at *4 (S.D.N.Y. July 29, 2024); *Lin v. Can. Goose US, Inc.*, 640 F. Supp. 3d 349, 361 (S.D.N.Y. 2022). Under New York law, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Lasalle Bank Nat'l Assoc. v. Citicorp Real Est., Inc.*, No. 02 Civ. 7868 (HB), 2003 WL 1461483, at *3 (S.D.N.Y. Mar. 21, 2003) (citation omitted).

Additionally, "a closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the 'existence of . . . a special relationship . . . [capable of] giv[ing] rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech.'" *Izquierdo v. Mondelez Int'l Inc.*, No. 16 Civ. 4697 (CM), 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 ((N.Y. 1996)); *see, e.g., Campbell*, 516 F.Supp.3d at 389–90 & n.9 (collecting cases for proposition that engage in a "basic commercial transaction ... does not give rise to the kind of special relationship necessary to maintain a claim for negligent misrepresentation."). Plaintiffs have not met this standard. Advertisements and simply being the manufacturer of a product do not create a special

23

relationship. *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14–CV–3826 (MKB), 2015 WL 5579872, at *25 (E.D.N.Y. Sept. 22, 2015). As such, Plaintiffs have not pled that a special relationship exists between the parties, and as such its final cause of action should be dismissed.

Moreover, Plaintiffs have not shown that there was any misrepresentation. As explained previously, the product provided by accessiBe has functioned as it is contractually obligated to in the Terms of Service. The fact that Plaintiffs were sued in a class action does not equate to the ineffectiveness of accessiBe's product. Tribeca Skin Care's lawsuit was settled, and there were no findings of fact that its website actually failed to comply with the requisite standards. Simliarly, Dillon Music's lawsuit has rendered no findings of fact. Because of this, Plaintiffs' claim of negligent misrepresentation fails. *Cosgrove v. Oregon Chai, Inc*., 520 F. Supp. 3d 562, 585 (S.D.N.Y. 2021) (explaining that where a plaintiff has failed to allege deception the negligent misrepresentation claim fails).

Lastly, the economic loss doctrine bars Plaintiffs' negligent misrepresentation claim. "A plaintiff cannot seek damages by bringing a tort claim when the injury alleged is primarily the result of economic injury for which a breach of contract claim is available." *Ademco Inc.,*2024 WL 3567417, at *6 (quoting *Miramontes v. Ralph Lauren Corp*., 2023 WL 3293424, at *13 (S.D.N.Y. May 5, 2023)); *See, e.g.*, *Elkind v. Revlon Consumer Prods., Corp.*, No. 14–CV–2484 (JS)(AKT), 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015) (dismissing negligent misrepresentation claim where plaintiffs alleged only economic loss).

## IV.    CONCLUSION

For the foregoing reasons, accessiBe respectfully requests that the Court dismiss with prejudice Plaintiffs' First Amended Complaint.

Dated:  December 20, 2024

Respectfully submitted:

**BLANK ROME LLP**

By:  */s/ Samuel D. Levy*

Samuel D. Levy
Roy W. Arnold
Aubre G. Dean
1271 Avenue of the Americas
New York, NY 10020
Tel.: 212-885-5000
Samuel.Levy@BlankRome.com
Roy.Arnold@BlankRome.com
Aubre.Dean@BlankRome.com

*Counsel for accessiBe, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2024, a true and correct copy of the foregoing Memorandum in Support of Defendant accessiBe's Motion to Dismiss was electronically filed with the Clerk of Court using the CM/ECF system which will send notification to all counsel of record.

*/s/ Samuel D. Levy*

Samuel D. Levy