UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SHERWIN K. PARIKH, MD, P.C. d/b/a
TRIBECA SKIN CENTER, and DILLON
MUSIC, individually and on behalf of all others
similarly situated,

                         Plaintiffs,

      -against-

ACCESSIBE, INC. and JOHN DOES 1-5,

                         Defendants.
-----------------------------------------------------------x

24-cv-4848 (PKC)

OPINION AND ORDER

CASTEL, U.S.D.J.:

        Plaintiffs Sherwin K. Parikh, MD, P.C., d/b/a Tribeca Skin Center, and Dillon Music move to disqualify Martin S. Krezalek and his firm from representing defendants in this action, including Accessibe, Inc. ("Accessibe"), because of information imparted by Tracy Armstrong, an attorney for Dillon Music, in a single telephone conversation with Krezalek. The motion is premised upon Rule 1.18 of the New York Rules of Professional Conduct relating to duties owed by a lawyer to a prospective client. For the reasons explained, the motion will be denied.

Procedural History Leading to the Motion to Disqualify

        This action was commenced on June 26, 2024, by Parikh against Accessibe and five Doe defendants (collectively, "Accessibe"). Parikh is presently represented by four lawyers, each from a different law firm. Parikh alleges that Accessibe markets a software product on a subscription basis as an effective, quick, and cost-effective means to guarantee that a website is in full compliance with the Americans with Disabilities Act ("ADA"), 42 U.S.C 12101 et seq.

1

The general premise of Parikh's five claims in his initial complaint is that Accessibe did not provide the service it promised.

Martin S. Krezalek of the law firm Blank Rome appeared in this action on August 5, 2024. (ECF 7-8.) At the time, Dillon Music was not a party to the action.

Accessibe expressed its intention to move to dismiss Parikh's complaint. In response, Parikh announced that he intended to amend his complaint to add an additional named plaintiff but did not identify the new party. (ECF 18.) On October 16, 2024, Parikh filed a First Amended Complaint joining Dillon Music as a co-plaintiff. (ECF 22.) The First Amended Complaint also added a sixth claim for breach of implied contract. (Id.) Neither Parikh nor Dillon Music sought to disqualify Krezalek.

Accessibe renewed its request to file a motion to dismiss, this time directed to the First Amended Complaint (ECF 23), and plaintiffs responded that they did not wish to amend their complaint in response to the arguments raised in Accessibe's letter. (ECF 24.) The Court set a schedule on the motion (ECF 25) and Accessibe filed its motion on December 20, 2024. (ECF 30.) Thereafter, plaintiffs filed a motion to file a Second Amended Complaint on January 9, 2025. (ECF 33.)

Two weeks later, on January 24, 2025, without complying with the Court's pre-motion letter requirement,[1] plaintiffs moved to disqualify Accessibe's counsel, Krezalek and all other lawyers at Blank Rome. (ECF 37.) The motion was premised upon a conversation that plaintiffs attest took place on September 12, 2024 between Tracy Armstrong, a lawyer for Dillon

---

[1] Individual Practices at 3.A. A wide array of motions are excluded from the pre-motion requirement, including those required to be made within a set non-extendable time period, certain routine motions, and, to accommodate any need for expedition, those brought on by Order to Show Cause. Motions to disqualify are not among the excluded motions. There are many and varied reasons for the pre-motion letter requirement: many potential motions may be resolved on consent; some may be resolved by an amendment to the pleadings; others may require some pre-motion discovery by one side or the other; and some prudently may be deferred to a later juncture in the case.

Music, and Krezalek.

The September 12 Telephone Call

Armstrong, a lawyer for Dillon Music who has not appeared in this action, states in her 3-page declaration that she was contacted by Dillon Music in August of 2024 about a lawsuit brought against Dillon Music under the ADA claiming that Dillon Music's website was not compliant with recognized standards for accessibility by persons with disabilities. (ECF 40 at ¶ 2.) Armstrong learned that Dillon Music was using Accessibe's software product that was touted as rendering a website ADA compliant. (Id. at ¶ 3.) She reached out to two executives of Accessibe for "legal support," who advised that Accessibe does not supply legal representation or indemnity of its customers but would provide her with a video that could be used to demonstrate that the software renders a site ADA compliant. (Id. at ¶ 4.) They also provided her with the name of Krezalek, who had represented many Accessibe customers who were sued under the ADA. (Id.)

Armstrong, in her declaration, states that she spoke with Krezalek on September 12, 2024 for 20 minutes and "explained that the purpose of my call was to secure legal support on behalf of my client." (Id. at ¶ 5.) She adds, "We also discussed my client's understanding of what it had purchased and what was included, my client's reaction to the lawsuit with which it had been served, and my client's expectations that Accessibe would provide a substantive defense." (Id.) Krezalek, in Armstrong's account, advised her that Dillon Music could retain him to defend the lawsuit at his normal hourly rate. (Id. at ¶ 6.) Krezalek mentioned towards the end of the conversation that he represented Accessibe. (Id. at ¶ 7.) Armstrong felt there would be a conflict in Krezalek representing Dillon Music, but did not express that concern to Krezalek. (Id. at ¶¶ 8-9.) She did, however, communicate her concerns to Mr. Dillon of Dillon Music. (Id.

3

at ¶ 9.) Armstrong states that she "later learned" that Krezalek was representing Accessibe in a suit brought by Dillon Music (presumably referring to this action), but does not specify when she learned this. (Id. at ¶ 10.)

Krezalek has submitted a declaration that tells a different version of the call. (ECF 51.) He has produced a telephone log confirming the existence of a phone call from a phone number associated with Armstrong's law firm on September 12 that lasted 901 seconds, i.e., 15 minutes and 1 second. (ECF 51-1.) He states that the caller (whose name he did not remember but accepts it was Armstrong) did not disclose that her client was Dillon Music. (ECF 51 at ¶¶ 18-20.) He is sure of this because he had been informed by Accessibe to be on the lookout for a possible lawsuit from Dillon Music. (Id. at ¶ 20.)

Krezalek declares under penalty of perjury that "the call was wholly noneventful and did not go beyond me discussing the general nature of serial ADA website litigation; my knowledge of the courts, judges, and plaintiffs' counsel who regularly bring such actions; and a generic defendant's typical options when sued." (Id. at ¶ 21.) They also discussed his experience with such cases and his hourly rate. (Id.) Krezalek adds, "Ms. Armstrong did not discuss or disclose confidential, privileged, or proprietary information about Dillon Music, nor did I inquire about confidential information. Ms. Armstrong did not share Dillon Music's (or her "client's") mental impressions, thoughts, ideas, strategies, or similar information about a pending lawsuit or a potential lawsuit against [Accessibe], not [sic] did I inquire of such information." (Id. at ¶ 24.) When Ms. Armstrong mentioned that her client had Accessibe's software running on its website and asked about its efficacy, Krezalek informed her that he represented Accessibe and that he was not aware of "any cases resulting in a finding that [Accessibe] did not work." (Id. at ¶¶ 27-28.) He received no follow-up communication from Armstrong or Dillon Music

and was never hired as Dillon Music's attorney. (Id. at ¶ 30.)

In a brief reply declaration, Armstrong adheres to her version of the call that she did mention that her client was Dillon Music. (ECF 53-1 at ¶ 2.) She states that "the purpose of my call was to secure legal representation, or indemnity to pay for legal representation, for Dillon Music," but did not threaten to sue Accessibe. (Id. at ¶¶ 2-3.) She adds, ". . . I recall expressing to Mr. Krezalek Dillon Music's impressions regarding the strength of the claims that had been brought against it and specifically that Dillon Music viewed it as [a] suit that should be settled for nuisance value." (Id. at ¶ 4.)

There is no claim that any document passed between Armstrong and Krezalek.

Standard Governing Motions to Disqualify

In exercising the power to disqualify an attorney, a court must "balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." Hempstead Video, Inc. v. Incorporated Village of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (citation and internal quotation marks omitted). On a disqualification motion, a court looks to state disciplinary rules to "merely provide general guidance and not every violation of disciplinary rule will necessarily lead to disqualification . . . ." Id. A motion to disqualify is subject to "a high standard of proof" because such motions "are often interposed for tactical reasons." Evans v. Artek Systems Corp., 715 F.2d 788, 791–92 (2d Cir. 1983) (citations omitted).

The Application of Rule 1.18 to the Facts Presented

Plaintiffs rely on Rule 1.18 of the New York Rules of Professional Conduct (the "Rule"), setting forth the duties owed by a lawyer to a prospective client. It provides in relevant part as follows:

>  (a) . . . a person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
>  (b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information . . . .
>
>  (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d) . . . .

The Court assumes without deciding that Armstrong qualifies as a person who consulted with a lawyer about the possibility of forming a client-lawyer relationship even though her conversation with Krezalek explored the possibility of her client, Dillon Music, forming an attorney-client relationship. Thus, the Court treats Armstrong's client as "a prospective client" of Krezalek for the purpose of the motion. Rule 1.18(a).

Krezalek presently represents a client, Accessibe, in this action with interests "materially adverse to those of a prospective client." Rule 1.18(c). Material adversity first arose on October 16, 2024, when the First Amended Complaint added Dillon Music as a named plaintiff on claims against Accessibe.

But the Court concludes that Krezalek did not receive information that could be significantly harmful to Dillon Music in the present action. The words "significantly harmful" are not defined in the Rule. "Significant" (as in major) means "having great meaning or lasting effect."[2] "Harmful" (as in detrimental) means "causing or capable of causing harm."[3] A fair assessment of whether information could be "significantly harmful" requires more than a review of the words communicated; it requires an examination of the surrounding context. Information

---

[2] https://www.merriam-webster.com/thesaurus/significant (last accessed May 22, 2025).
[3] https://www.merriam-webster.com/thesaurus/harmful (last accessed May 22, 2025)

that is vague, gauzy, or obvious is not capable of being significantly harmful.

Plaintiffs claim that the "significantly harmful" information was as follows:

> Mr. Krezalek and I discussed Dillon Music's purchase and use of the Accessibe product, its reasons for purchasing the product, the purpose and efficacy of the Accessibe product, and the facts at issue in the litigation naming Dillon Music as a defendant. We also discussed my client's understanding of what it had purchased and what was included, my client's reaction to the lawsuit with which it had been served, and my client's expectations that Accessibe would provide a substantive defense.

(ECF 40 at ¶ 5.)

Examining the context, the subject of Armstrong's call was an ADA compliance lawsuit brought against her client Dillon Music by a party that she does not name and that was filed in an unidentified jurisdiction. But the First Amended Complaint helps provide some detail. It alleges that an ADA class action was commenced against Dillon Music in May 2024. (ECF 22 at ¶ 81.) The Court takes judicial notice that on May 15, 2024 an ADA class action was commenced against Dillon Music in this district. Liz v. Dillon Music, Inc., 24-cv-3735 (KPF) (ECF 1, 7, 17). At the time of the September 12 call to Krezalek, Dillon Music had already answered the complaint in the Liz action setting forth twelve affirmative defenses. (Id. at ECF 7.) Thus, the "facts at issue in the litigation naming Dillon Music as a defendant" were knowable from the pleadings in the Liz action at the time of the Armstrong-Krezalek call. (Id. at ECF 1, 7.) Indeed, the allegations in the Liz action largely track those made in the many similar ADA non-compliance actions filed in this district. (Id. at ECF 1.) The Rule's requirement that the prospective client have conveyed information that is "significantly harmful" requires that the information be confidential information "available only to a select group of intended recipients." Miness v. Ahuja, 762 F. Supp. 2d 465, 481 (E.D.N.Y. 2010). Information about the facts at issue in the litigation were a matter of public record.

Nor does Armstrong's description of her client's perceptions of "the purpose and

7

efficacy of the Accessibe product" amount to information which poses a significant harm to Dillon Music. Dillon Music's view of the purpose and efficacy of the Accessibe product is knowable from the face of the First Amended Complaint, filed before the disqualification motion: "Dillon Music would not have purchased Accessibe's accessWidget had it known it would not be effective in making its website conform with WCAG standards and comply with the ADA. Nor would Dillon Music have purchased a subscription had it known of the frequency of lawsuits against businesses that had installed Accessibe's accessWidget." (ECF 22 at ¶ 86.) Armstrong makes no claim on this motion that she disclosed to Krezalek a materially different version of the facts which were at odds with the allegations of the First Amended Complaint.

As to Dillon Music's "reasons for purchasing the product" and "understanding of what it had purchased," the First Amended Complaint sets forth its reasons and understanding in detail—it was seeking "the best way to make its website ADA compliant so as to avoid such demands and the threat of such lawsuits in the future." (Id. at ¶ 71.) There is no hint in Armstrong's two declarations filed with the Court that she actually told Krezalek a different and contradictory story, which, if it ever came to light, would be significantly harmful to her client.

Armstrong also states that "I recall expressing to Mr. Krezalek Dillon Music's impressions regarding the strength of the claims that had been brought against it and specifically that Dillon Music viewed it as suit [sic] that should be settled for nuisance value." (ECF 53-1 at ¶ 4.) But neither Krezalek nor his client was party to the Liz case. Krezalek's practice is defending claims against operators of websites, not suing them. (ECF 51 at ¶¶ 6-7.) In addition, knowing that Dillon Music wanted to settle the Liz action, which it did before plaintiffs filed the instant motion, for as little money as possible gives Accessibe no advantage in the present action before this Court, which brings claims against Accessibe for selling Dillon Music a system for

ADA compliance that did not perform as expected.

The nature of ADA non-compliance litigation is such that there is little mystery surrounding each particular action or the desire of a defendant to resolve the action as cheaply as possible. Here is how Dillon Music's First Amended Complaint describes the lay of the land:

> Recent years have seen a dramatic increase in lawsuits alleging that a business's website does not comply with ADA Title III. Most of these cases are filed by a small number of law firms that file hundreds of nearly identical boilerplate complaints with nearly identical factual allegations. While such claims are rarely, if ever, tried to verdict, the legal actions are nonetheless disruptive and expensive for the businesses that are sued.

(ECF 22 at ¶ 5 (footnote omitted).) While there is no evidence that Armstrong, in fact, conveyed to Krezalek information that could be significantly harmful to her client, it is also doubtful that she possessed much information of that nature concerning the "boilerplate" lawsuit. At the time of the September 12 call, she felt Accessibe owed her client indemnification or a defense and called Krezalek, the lawyer suggested by representatives of Accessibe, in order to explore those options. Armstrong, a member of the bar who is described as being a member of the District Ethics Committee for District VIII of New Jersey (ECF 38 at 3 n.1), makes no claim that she did not understand the concept of privileged or confidential client information or that she freely disclosed such information over the phone with a lawyer who had been recommended by Accessibe. Plaintiffs' assertion, based upon Armstrong's thin declarations, that she conveyed information that could be damaging to Dillon Music in the event it sued Accessibe (which it did 34 days later) is, charitably put, implausible.

CONCLUSION

Crediting Armstrong's version of the September 12, 2024 call, plaintiffs have not demonstrated that Armstrong, acting on behalf of Dillon Music, communicated to Krezalek any information that could be significantly harmful to Dillon Music in its present action against

9

Accessibe. The motion to disqualify is DENIED. The Clerk is requested to terminate the motion at ECF 37.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Date: New York, New York
       June 4, 2025

10